

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KELVIN D. BROWN | CIVIL ACTION: 05-1106 |
| VERSUS | JUDGE DONALD E. WALTER |
| KANSAS CITY SOUTHERN RAILWAY | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by the Defendant, Kansas City Southern Railroad. See Record Doc. #35. For the reasons set forth below, the Defendant's motion for summary judgment is **GRANTED**.

### STATEMENT OF THE CASE

Kelvin D. Brown ("Brown") began his employment with Kansas City Southern Railway Company ("KCSR") on November 3, 2003, as a laborer. In December of 2003, Brown approached Mr. Charles Dotson, KCSR mechanical supervisor, and expressed his interest in working as an apprentice electrician or machinist. Brown was promoted to the probationary position of apprentice electrician in the locomotive Diesel Shop on January 2, 2004. A probationary period of 122 days is standard pursuant to the Collective Bargaining Agreement in place at KCSR. See Record Doc. #35, Exhibit A.

---

* This opinion is not intended for commercial print or electronic publication.

1

While Brown was employed as an apprentice electrician the Foreman of the KCSR Diesel Shop, Larry Reynolds ("Reynolds"), received complaints from every electrician that worked with Brown regarding his abilities as an electrician and his poor attitude. See Record Doc. # 35, Reynolds Affidavit ¶ 6. Reynolds duties at KCSR include overseeing and assigning jobs to the electricians. Id. at ¶ 3. On or about February 7, 2004, Reynolds requested that Brown perform a particular job that first required mechanics to prepare a locomotive. Id. at ¶ 7. Reynolds asked Brown to remain at the job site until the mechanics were through preparing the locomotive. Id. When the time came for Brown to perform his portion of the job, Reynolds could not locate him. Id. at ¶ 8. Another apprentice electrician had to complete the job assigned to Brown. Id.

Reynolds ultimately determined that Brown lacked the ability to work with and around electricity, and could potentially hurt himself or someone else if he remained on the job. Id. at ¶ 18. Reynolds recommended to his supervisors Dan Agler ("Agler"), the Superintendent of Locomotives, and Andy Fonville ("Fonville"), Administrative Manager, that Brown no longer perform any electrician functions. Id. at ¶ 19.

On at least one occasion Brown specifically disobeyed the orders of a supervisor. Against orders, Brown confronted Lead Electrician, Charlie Bamburg ("Bamburg"), regarding statements Bamburg allegedly made about Brown's ability as an electrician. See Record Doc. #35, Bamburg Affidavit ¶ 5; Record Doc. #35, Fonville Affidavit ¶ 12. On January 10, 2004, Brown approached Fonville with concerns about statements allegedly made by Bamburg about Brown's ability as an electrician. See Record Doc. #35, Fonville Affidavit ¶ 11. Fonville instructed Brown to disregard the statements and specifically not to confront Bamburg. Id. at ¶ 12. Two days later, Brown disobeyed Fonville and confronted Bamburg about the statements. Id. at ¶ 13;

2

Record Doc. #35, Bamburg Affidavit ¶ 5. Bamburg reported the incident to Fonville and Agler. See Record Doc. #35, Bamburg Affidavit ¶ 6.

KCSR terminated Brown on February 9, 2004. KCSR maintains that Brown was terminated because he lacked the aptitude to learn or perform his craft, was unable to get along with his co-workers, and received unfavorable evaluations. See Record Doc. #35, Agler Affidavit ¶ 8. Brown alleges that KCSR terminated him because of his race, and that KCSR falsified documentation to facilitate his termination. Brown also alleges that KCSR treated black and white employees differently with respect to on the job training. Lastly, Brown alleges that racial discrimination by a KCSR supervisor created a hostile or abusive work environment.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56 (c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id. The court must "review the facts drawing all references most favorable to the party opposing the motion." Reid v. State Farm Mutual Auto Insurance Co., 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air, Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).[1]

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2

---

[1] In an attempt to defeat KCRS's motion for summary judgment and create a genuine issue of material fact, Brown responded with "Plaintiff's Objection to Defendant The Kansas City Southern Railway Company's Motion for Summary Judgment." Attached to his response, Brown submitted a lengthy unsworn statement. See Record Doc. # 44. An unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). However, a statutory exception to this rule exists under 28 U.S.C. § 1746, which permits an unsworn declaration to substitute for an affiant's oath if the statement contained therein is made "under the penalty of perjury" and verified as "true and correct." Brown's statement does not qualify as competent summary judgment evidence. Brown's statement is not in substantial conformity with the statutory prerequisites because, as drafted, there is nothing contained within the statement subjecting him to penalties of perjury. See Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988). Accordingly, Brown's statement submitted with his opposition to Defendant's motion for summary judgment cannot and will not be considered.

4

requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

### A. Race Discrimination

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a). A plaintiff may prove employment discrimination through direct or circumstantial evidence. See Laxton v. Gap Inc., 333 F.3d 573, 578 (5th Cir. 2003). As there is no direct evidence of discrimination in this case, Brown's claims are evaluated using the evidentiary framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under the McDonnell Douglas framework, Brown must first establish a prima facie case of discrimination by a preponderance of the evidence by showing the following: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that he was replaced with a person outside of the protected class, or he was treated less favorably than similarly situated employees outside of the protected class. See Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003); Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-513 (5th Cir. 2001).

It is questionable whether Brown has set forth a prima facie case of race discrimination. Brown has established that (1) he is a member of a protected class, and (2) that he suffered an adverse employment action. However, whether Brown was qualified for the probationary position

5

is debatable due to his termination for poor performance evaluations. Further, Brown has not shown that he was replaced by someone outside the protected class. There is nothing in the record regarding Brown's replacement after his termination, much less that Brown was replaced by someone from outside his protected class.

Brown has also failed to show that KCSR retained a similarly situated person outside of his protected class who engaged in conduct nearly identical to that for which he was terminated. Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003); Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 514 (5th Cir. 2001). In cases involving separate incidents of misconduct "to be similarly situated [the] employees' circumstances, including their misconduct, must be nearly identical." Perez v. Texas Dep't. of Criminal Justice, Institutional Div., 395 F.3d 206, 213, (5th Cir. 2004). In his unsworn statement Brown alleges that he was treated less favorably than two employees outside of his protected class.[2] Brown alleges that a white apprentice electrician derailed a train, but was not terminated. Also, Brown alleges that a white apprentice electrician who had been terminated was later told by a supervisor that the termination papers would be held to see if the man's job could be reinstated.

Even if the Court could evaluate Brown's statement to determine whether a genuine issue of material fact has been raised, the Court would still find that summary judgment in favor the KCSR is appropriate. Brown's alleged misconduct involves disobeying direct orders of his supervisors. The first white employee derailed a train. The circumstances surrounding Brown and the first white employee are not nearly identical. As to the second white employee, Brown

---

[2] The Court cannot consider Brown's statement to create a genuine issue of material fact. See supra, footnote 1.

provides no indication of the reason for his termination. Therefore, a comparison cannot be made by the Court to determine whether the circumstances surrounding Brown and the second white employee were nearly identical.

Although Brown has likely failed to establish a prima facie case of discrimination, the Court will continue its analysis under the McDonnell Douglas framework out of an abundance of caution.

Even if Brown were able to make a prima facie case as to his termination, he would still be unable to survive summary judgment. Assuming that Brown had succeeded in establishing a prima facie case, the burden then shifts to KCSR to articulate a legitimate, nondiscriminatory reason for the challenged employment action. KCSR's burden is only one of production, not persuasion, and involves no credibility assessments. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). If KCSR meets its burden, Brown then bears the ultimate burden of proving that KCSR's proffered reason is not true, but instead is a pretext for the real discriminatory purpose. See id. To carry this burden, Brown must rebut each nondiscriminatory reason articulated by KCSR. See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (citation omitted). Brown can establish pretext by "showing that [KCSR's] proffered explanation is false or "unworthy of credence." Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097 (2000)). At the summary judgment stage, the question is not whether Brown has proven pretext, but rather whether he has raised a genuine issue of fact with respect to pretext. See Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir. 1996).

KCSR has proffered numerous legitimate and nondiscriminatory reasons for Brown's termination, which Brown has failed to rebut by demonstrating pretext. Brown was terminated

from his position as apprentice electrician by Agler, Superintendent of Locomotives at KCSR. As to the reason for Brown's termination, Agler specifically stated:

> I terminated Mr. Brown on February 9, 2004, because Mr. Brown showed no aptitude to learn or perform his craft, he was unable to get along with his co-workers and he received an unfavorable evaluation from his co-workers.

See Record Doc. #35, Agler Affidavit ¶ 8. Brown has put forth no evidence to demonstrate that Agler's reasons were false or merely pretext for discrimination.

Brown received several poor evaluations from his co-workers and supervisors. In an evaluation by John Jennings dated January 12, 2004, Brown was given a rating of "1+" on his ability to demonstrate an understanding of major job functions. See Record Doc. #35, Exhibit B. A rating of "1" indicates that the employee requires repeated assistance in performing a task. Id.[3] In an evaluation by S. L. Lavery dated February 1, 2004, Brown was given an overall rating of "below average." See Record Doc. #35, Exhibit C. In an evaluation by Jerry Dunn dated February 9, 2004, Brown was given an overall rating of "below average." See Record Doc. #35, Exhibit D. In an evaluation by Larry Reynolds dated February 9, 2004, Brown was given an overall rating of "below average." Id.

Brown has offered no competent evidence to rebut the legitimate, nondiscriminatory reasons for his dismissal offered by KCSR. Brown alleges in his unsworn statement that KCSR forged his signature on the evaluations in question in an effort to create a record to support his

---

[3] Mr. Jennings also evaluated Brown positively on his dependability, cooperativeness, and safety. This is the only positive evaluation of Brown in the record during his tenure as an apprentice electrician.

8

termination. As discussed <u>supra</u>, the Court cannot consider Brown's unsworn statement.[4] Further, Brown stated in his deposition that he did not have any evidence to support his contention that the evaluations were falsified. <u>See</u> Record Doc. #35, Brown Deposition at 154-155.

Brown also alleges that he was treated differently than white employees with respect to training. Specifically, Brown argues that he did not receive the same quality of training as two white apprentice electricians, Matt Jones ("Jones") and Carter Hasty ("Hasty"). <u>See</u> Record Doc. #35, Brown Deposition at 139. Brown makes a conclusory allegation that Jones and Hasty received better training because they were allowed to work the night shift and to hostle more.[5] Fonville, Administrative Manager at the KCSR Diesel Shop, stated the following regarding training of apprentice electricians:

> At no time did Mr. Brown ever come to me and request that he be given additional training or that he be moved from one shift to another. The training that electrician apprentices receive on one shift is no different than the training that the electrician apprentices would receive on another shift. Any training that an apprentice electrician would receive on a night shift is no better or no worse than the training that he would receive on the other shifts. The includes any training with regards to hostling.

<u>See</u> Record Doc. #35, Fonville Affidavit ¶4-6. Brown has offered no evidence to support his contention that the training received by an apprentice electrician on the night shift is inferior to that received on the day shift.

---

[4] Even if the Court questioned the authenticity of the employee signature in the evaluations provided by KCSR, Brown still has not provided evidence to suggest that the legitimate, non-discriminatory reasons offered by KCSR for his termination were a pretext for discrimination.

[5] "Hostling" is defined as the act or process of handling a locomotive between runs that includes taking it to the enginehouse and delivering it to the road crew. Webster's Unabridged International Dictionary (3d ed. 1986).

Brown has offered no evidence to demonstrate that the legitimate and nondiscriminatory reasons offered by KCSR for his termination are pretextual. Therefore, summary judgment in favor of KCSR is appropriate as to Brown's claim of discrimination in violation of Title VII.

## B.  Harassment

As previously mentioned, Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race. See 42 U.S.C. § 2000e-2(a)(1). Brown may also establish a Title VII violation by proving that racial discrimination has created a hostile or abusive work environment. See Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001).

To establish a hostile work environment claim, Brown must establish five elements: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. See Celestine, 266 F.3d at 353.[6]

In order for harassment on the basis of race to "affect a term, condition, or privilege or employment," the harassment must be "sufficiently severe or pervasive [as] to alter the conditions of []employment and create an abusive working environment." Ramsey, 286 F.3d at 268 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). The Court must consider all of the circumstances surrounding the alleged harassment to determine if it rises to this level

---

[6] However, in cases where the alleged harassment has been committed by a supervisor with "immediate (or successively higher) authority over the harassment victim," Brown need not establish the fifth element. Id.

10

including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

Brown alleges that Agler harassed him by standing on a balcony overlooking the train yard to watch him work. Brown claims that Agler would stand outside the entire time that he was in the train yard, and that Agler would return to his office only when he left the train yard. In his sworn affidavit, Agler stated the following in response:

> There is a balcony near my office which looks out over the KCS yard. I often go out onto the balcony to use my cell phone or to smoke. When I am on this balcony, I frequently look out into the yard looking out from the balcony at all activities, but I was never observing the activities of any particular employee, including Kelvin Brown.

See Record Doc. #35, Agler Affidavit ¶10.

The conduct complained of by Brown does not rise to the level necessary to create a hostile work environment. Brown has failed to demonstrate that Agler's decision to stand outside on a balcony was racially motivated or "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." See Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001). Further, even if Agler stood on the balcony for the sole purpose of watching Brown perform his duties, this conduct fails to meet the degree of conduct necessary to establish a hostile work environment violation of Title VII.

Accordingly, summary judgment is appropriate as to Brown's claim of a violation of Title VII due to a hostile or abusive work environment.

## CONCLUSION

For the reasons set forth above, Kansas City Southern Railroad's Motion for Summary Judgment is **GRANTED**. All of Brown's claims against Kansas City Southern Railway are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED**, at Shreveport, Louisiana, this 8th day of May, 2007.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE